UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| PEGGY ABNER, LINDA KENDALL, and UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 4:05-cv-0106-DFH-WGH |
| JEWISH HOSPITAL HEALTH CARE SERVICES, INC., and SCOTT MEMORIAL HOSPITAL, | ) ) ) ) | |
| Defendants. | ) ) | |

ENTRY ON DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

This case is a *qui tam* action brought by two former employees of defendants alleging healthcare fraud and retaliation in violation of the False Claims Act, 31 U.S.C. §§ 3729-3731. The two plaintiff-relators, Peggy Abner and Linda Kendall, worked at defendant Scott Memorial Hospital in Scottsburg, Indiana. Defendants Jewish Hospital Healthcare Services and Scott Memorial Hospital have moved to dismiss the relators' claims for failure to state a claim for relief. Both defendants have filed answers to the amended complaint at issue, so the court treats both motions as motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). As explained below, the motions are granted in part and denied in part.

*Judgment Standard*

In evaluating a Rule 12(c) motion for judgment on the pleadings, the court must treat all well-pleaded allegations asserted in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the light most favorable to the plaintiff.  See *Pisciotta v. Old National Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (observing that courts review a Rule 12(c) motion under the same standard that applies to a Rule 12(b)(6) motion).  A plaintiff need not prove her case in the complaint, but the factual allegations must create support beyond the speculative level for the assertion that the plaintiff is entitled to relief.  See generally *Bell Atlantic Corp. v. Twombly*, 550 U.S. —, 127 S. Ct. 1955, 1965 (2007).  Judgment is warranted if the factual allegations, seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.  See generally *id.* at 1968-69.

Rule 9(b) requires that fraud claims "state with particularity the circumstances constituting fraud."  The particularity requirement is intended to require more investigation before a complaint is filed to protect defendants from the harm that can result from the public accusation of fraud.  *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007).  Generally, the complaint must set forth the who, what, when, where, and how of the fraud.  *Id.*, citing *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

*The Plaintiff-Relators' Allegations*

Relator Abner had two stints of employment with Scott Memorial Hospital, the first from September 2003 to January 2004 and the second from June 2004 to December 9, 2004. During her first period of employment at the hospital, Abner worked primarily as a phlebotomist but took on additional duties, including entering orders into a computer, reporting examination results, and assisting the laboratory's secretary. During her second period of employment, Abner represented the laboratory in the hospital's quality control team, which was charged with searching for laboratory errors. After the laboratory's secretary quit during this second stint, Abner assumed those duties.

Defendant Jewish Hospital Healthcare Services employed relator Kendall as a laboratory technician and assigned her to Scott Memorial Hospital, one of its network facilities. Kendall participated in all aspects of the laboratory, including drawing blood samples, processing and labeling blood samples, performing tests in each of the laboratory's testing areas, and participating in accreditation and improvement proficiency tests. Kendall worked at Scott Memorial Hospital from March 2001 to December 16, 2004.

The relators allege that from June to December 2004, and at other times, laboratory manager Paul Pierce at Scott Memorial Hospital issued policy statements and instructed laboratory employees to generate fraudulent Medicare

and Medicaid bills.   The relators allege that Pierce authorized six types of fraudulent billing practices:  (1) submitting Medicare and Medicaid invoices for tests that a physician did not order; (2) submitting Medicare and Medicaid invoices for tests that were not performed; (3) submitting Medicare claims for tests that were not yet completed; (4) substituting claims for services Medicare would not cover for claims for services that Medicare would cover; (5) submitting separate claims for pre-operative tests; and (6) submitting Medicare claims for tests performed on spoiled blood samples.   The relators also allege that defendants' employees falsely certified compliance with Medicare regulations in the billing practices just described.

In November 2004, the relators contacted federal government officials seeking information about how to disclose properly the alleged fraudulent practices.  On December 8, 2004, the relators told defendants' employee John Schecler (whose specific capacity they did not plead) about their plans to notify government officials of the practices the relators had witnessed.  On December 9, 2004, defendants terminated relator Abner and suspended relator Kendall.  On December 16, 2004, defendants terminated Kendall.

On July 21, 2005, the relators filed this *qui tam* action under seal against defendants.  On February 20, 2007, the United States notified this court that it did not intend to pursue the action but requested service of all pleadings and orders.  On February 21, 2007, the court unsealed the complaint for service on

defendants.   On July 31, 2007, defendants filed a joint motion to dismiss the original complaint on Federal Rules of Civil Procedure 9(b) and 12(b)(6) grounds. On October 19, 2007, the relators filed an amended complaint that is the subject of the pending motions for judgment on the pleadings.  This court has jurisdiction under 28 U.S.C. § 1331.

*Discussion*

I.      *Section 3729(a) Claims*

        A.      *General Standards for Pleading under the False Claims Act*

        The False Claims Act, in 31 U.S.C. § 3729(a)(1), holds liable anyone who knowingly presents or causes to be presented to the United States a false claim for payment.  Subsection 3729(a)(2) holds liable anyone who knowingly makes, uses, or causes to be made or used a false statement to get the government to pay a false claim.  In their complaint, the relators do not specify which route they are pursuing, so the court considers both.   See generally *Sidney S. Arst Co. v. Pipefitters Welfare Educational Fund*, 25 F.3d 417, 421 (7th Cir. 1994) (reversing dismissal; recognizing that "the district court has a duty to consider whether a plaintiff's allegations could provide relief under *any* available legal theory").

        To establish a claim under subsection 3729(a)(1), the relators must plead with particularity three elements:   (1) a false claim (2) which the defendant

presented or caused to be presented to the United States for payment (3) knowing that the claim was false.  See *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740-41 (7th Cir. 2007) (affirming dismissal of healthcare fraud claims).  To establish a claim under subsection 3729(a)(2), the relators must plead with particularity three elements:  (1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew the statement was false.  *Id.* at 741.  Defendants argue here that the relators have not pled their allegations of false billing with particularity because they failed to allege that the claims were actually submitted for payment, failed to submit proof that the claims were actually false, and failed to allege that the defendants knew the claims were false.

First, a principal difference between subsection 3729(a)(1) and subsection 3729(a)(2) is that only subsection 3729(a)(1) requires the relators to allege submission of a claim for payment.  See *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. —, 128 S. Ct. 2123, 2129 (2008) ("While § 3729(a)(1) requires a plaintiff to prove that the defendant 'present[ed]' a false or fraudulent claim to the Government, the concept of presentment is not mentioned in § 3729(a)(2)."). There is some debate about what facts a relator must plead to allege properly a submission under subsection 3729(a)(1).

In *United States ex rel. Clausen v. Laboratory Corp. of America*, 290 F.3d 1301, 1311 (11th Cir. 2002) (affirming dismissal of healthcare fraud claims), the

majority identified the submission of a false claim as "the *sine qua non* of a False Claims Act violation." The relator, a medical testing competitor, identified several fraudulent schemes in detail and alleged that the specific tests he identified as fraudulent were submitted to the United States for payment the day of or within a few days of service. The *Clausen* majority affirmed dismissal of the relator's claims on the pleadings because the relator, an outsider, alleged submission "without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* In dissent, Judge Barkett observed drily that the relator's "allegations regarding billing would appear to be mere conjecture only if we were willing to attribute to [defendant] a highly unusual business model that consisted in arranging for the systematic administration of medically unnecessary tests for which it never intended to be paid." *Id.* at 1317.

Post-*Clausen* cases often discuss the facts a relator must plead in terms of "some indicia of reliability," see *Clausen*, 290 F.3d at 1311, to support a relator's claim of actual submission. Courts have found inadequate indicia of reliability where the relator is not directly involved in billing or does not allege personal knowledge of specific instances of fraudulent billing. See *United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 556-57 (8th Cir. 2006) (affirming dismissal of healthcare fraud claims where relator alleged that every claim submitted for anesthesia services was fraudulent but did not identify any particular claim as representative of the scheme alleged); *Corsello v. Lincare, Inc.*,

428 F.3d 1008, 1013-14 (11th Cir. 2005) (affirming dismissal of healthcare fraud claims where relator was a sales employee and was aware of fraudulent billing practices but did not have access to company files outside his own offices).

Courts have found adequate indicia of reliability where the relator was instructed to prepare fraudulent bills for services she performed or where the employee worked in the department where the alleged fraudulent billing occurred. See *United States ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005) (affirming denial of motion to dismiss healthcare fraud claims on Rule 9(b) grounds for failure to explain why relator believed fraudulent claims were ultimately submitted where relator alleged she had personal knowledge of billing for services she rendered and was instructed to code falsely); *Hill v. Morehouse Medical Associates*, No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003) (reversing dismissal of healthcare fraud claims where relator could not identify particular claims submitted but worked in the healthcare provider's billing department, was aware of false claims routinely submitted to the government, and alleged details of the fraudulent billing practices), cited by *Corsello*, 428 F.3d at 1013.

Defendants seem to want to require a relator to be able to present a chart explaining each step (and identifying an actor for each step) that a claim undergoes between its creation in a department and its placement in the mail for payment. Such a requirement would go far beyond the protections of Rule 9(b)

and would ignore the realities of modern business practices.  Under subsection 3729(a)(1), a relator's complaint must describe (not prove) a particular false claim she knows or has reason to know (based on indicia of reliability) that a defendant's agent submitted for payment.  See generally *United States ex rel. Bledsoe v. Community Health Systems, Inc. (II)*, 501 F.3d 493, 506-09 (6th Cir. 2007) (reversing in part dismissal of healthcare fraud claims; finding that while the identity of the natural person who submitted a false claim on behalf of a corporate defendant is relevant under Rule 9(b) and section 3729(a), it is not essential).

In any event, subsection 3729(a)(2) clearly requires "a causal rather than a temporal connection between fraud and payment."  *United States ex rel. Main v. Oakland City University*, 426 F.3d 914, 916 (7th Cir. 2005) (reversing dismissal of higher education fraud claim under subsection 3729(a)(2); observing that if a "false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork"); see also *Allison Engine Co.*, 553 U.S. at —, 128 S. Ct. at 2129 (observing that subsection 3729(a)(2) does not require presentment).  Neither section requires an allegation of receipt of payment.  See *Main*, 426 F.3d at 917 (recognizing that the "statute provides for penalties even if (indeed, *especially* if) actual loss is hard to quantify"); *United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995) (reversing in part dismissal of contract fraud claims; observing that because section 3729 imposes civil penalties for

submitting a false statement and for making a false statement to induce payment, evidence of payment is not necessary to state a claim but is relevant for determining damages).

Second, defendants have argued that the relators' failure to provide evidence of the improper coding and billing is fatal to their claims.  Neither section 3729 nor Rule 9(b) requires proof of the falseness of the claim at the complaint stage.[1] An allegation that a defendant's agent billed the government for a particular patient on a particular day for laboratory services not received by changing the billing code or by fabricating a billing code is sufficient to put the defendant on notice of the alleged false claim or statement.  See generally *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (affirming dismissal of RICO fraud claim; observing that the relator must plead the "who, what, when, where, and how" so that a defendant has notice of the alleged behavior and is protected from frivolous suits and from fishing expeditions).  At this stage, however, a relator does not need to submit affidavits or other evidence

---

[1]This is not to say that the relator can proceed much beyond the pleadings stage without a claim in hand, for a claim in hand will be necessary to survive a motion for summary judgment.  See *United States ex rel. Aflatooni v. Kitsap Physicians Service*, 314 F.3d 995, 1002 (9th Cir. 2002) (affirming grant of summary judgment for defendants where the relator failed "to come to court with a claim in hand or with sufficiently detailed circumstantial evidence to establish that the defendant actually submitted a false claim").

explaining how a particular code was changed or proving that the defendant billed the government for a patient for services not received; a specific allegation will do.[2]

Third, a relator must allege that a defendant knew a claim or statement was false.  Section 3729(b) defines knowledge as actual knowledge of the falsity, deliberate ignorance of the truth or falsity of the information, or reckless disregard of the truth or falsity of the information.  Billing errors are not actionable, but material lies are actionable.  See *United States ex rel. Riley v. St. Luke's Episcopal Hospital*, 355 F.3d 370, 376 (5th Cir. 2004) (distinguishing between errors and intentional falsehoods); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019 (7th Cir. 1999) (affirming summary judgment for defendant; observing

---

[2]Defendants' reliance here on *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730 (7th Cir. 2007) (affirming dismissal of healthcare fraud claims), and *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853 (7th Cir. 2006) (affirming summary judgment for defendants), is misplaced. Both cases dealt with claims of healthcare fraud based on recycled medications. That particular type of claim requires the relator to have two bills in hand at the summary judgment stage: one showing that a defendant billed for certain pills once, and another showing that a defendant billed for at least one returned pill again.  The relator's failure in *Crews* to provide evidence of the second bill was fatal at the summary judgment stage.  Relying heavily on *Crews*, the *Fowler* court upheld the dismissal of a nearly identical complaint because the relators had only "one-half of the evidence they need to survive under Rule 9(b)."  *Fowler*, 496 F.3d at 741.  It is seemingly impossible to prove fraudulent billing of recycled medications on evidence of numbers alone.  See *United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 443 (3d Cir. 2004) (affirming summary judgment for defendants on similar recycled medication claim).  To the extent that *Fowler* can be read to require evidence in hand at the pleadings stage, however, any such requirement would be inconsistent with modern civil practice.  See generally *Bell Atlantic Corp. v. Twombly*, 550 U.S. —, 127 S. Ct. 1955, 1965 (2007) ("And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation marks omitted).

that an intentional lie will support a section 3729(a) claim only if the lie was material to the fraud).

While Rule 9(b) requires a party alleging fraud to plead the circumstances of the fraud with particularity, the rule allows a party to plead intent generally. An allegation that a corporate defendant through an agent participated in the scheme is sufficient to plead knowledge of the fraud.  See generally *Riley*, 355 F.3d at 378 (reversing dismissal of healthcare fraud claims where relator alleged that defendants knew of scheme of fraudulent conduct by participating in scheme and in subsequent cover-up); cf. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. —, 127 S. Ct. 2499, 2509 (2007) (observing that under the Private Securities Litigation Reform Act of 1995, which statutorily requires culpability to be pled with particularity, the inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard").

B.     *Relators' Amended Complaint*

Here, in pleading the first allegedly fraudulent billing practice – creating and/or submitting Medicare and Medicaid invoices for tests that a physician did not order – the relators pointed to several specific instances as representative samples of a fraudulent billing scheme.  The relators identified five different patients whom the laboratory billed the government on five separate dates for tests not ordered by a physician.  Am. Compl. ¶ 29.  The relators alleged that defendants' officers, agents, supervisors, and employees knew these claims for payment were false.  Specifically, the relators alleged that laboratory supervisor Paul Pierce instructed laboratory employees to engage in these billing practices, knowing them to be fraudulent.  *Id.*, ¶¶ 19, 22.  The relators worked in the laboratory and were in a position to observe personally the fraudulent billing practices.  The allegations describe intentional falsehoods, not honest billing errors.  Under section 3729(a), the relators have stated with sufficient particularity claims of fraudulent invoices for tests that physicians did not order.

In pleading the second allegedly fraudulent billing practice – creating and/or submitting Medicare and Medicaid invoices for tests that were not performed – the relators pointed to several specific instances as representative samples of a fraudulent billing scheme.  The relators identified ten different patients (two of whom were a part of the group of five just mentioned) for whom the laboratory billed on eleven separate dates (one patient for whom defendants allegedly billed

falsely on two separate dates) for services not rendered.  *Id.*, ¶ 30.  The relators alleged that defendants' officers, agents, supervisors, and employees knew these claims for payment were false.  Specifically, the relators alleged that laboratory supervisor Paul Pierce instructed laboratory employees to engage in these billing practices, knowing them to be fraudulent.  *Id.*, ¶¶ 19, 22.  The relators worked in the laboratory and were in a position to observe personally the fraudulent billing practices.  The allegations describe intentional falsehoods, not honest billing errors.  Under section 3729(a), the relators have stated with sufficient particularity claims of fraudulent invoices for services not rendered.

In pleading the third allegedly fraudulent billing practice – creating and/or submitting Medicare invoices for tests before they were performed – the relators identified six different patients for whom the laboratory billed on six separate dates for tests it claimed had been performed but that had not yet been performed as examples of a fraudulent billing scheme.  Am. Comp. ¶¶ 33-35.  The relators alleged that defendants' officers, agents, supervisors, and employees knew these tests had not yet been completed.  Specifically, the relators alleged that laboratory supervisor Paul Pierce instructed laboratory employees to engage in this billing practice, knowing it to be fraudulent.  *Id.*, ¶¶ 19, 31.  The relators worked in the laboratory and were in a position to observe personally the fraudulent billing.  The allegations describe intentional falsehoods, not honest billing errors.  Under section 3729(a), the relators have stated with sufficient particularity claims of fraudulent invoices for tests performed that had not yet been performed.

In pleading the fourth and fifth allegedly fraudulent billing practices – creating and/or submitting bills using false codes and separate bills for pre-operative tests – the relators did not identify any individual transactions or describe in detail when or how defendants carried out such schemes.   As discussed above, a relator can sometimes cure deficiencies in pleading the "who, what, when, where, and how" of fraud by pleading sufficient indicia of reliability that put the defendant on notice of the particular behavior involved and that assure the court that the allegations are not merely conclusory.   See *Joshi*, 441 F.3d at 556-57 (affirming dismissal of healthcare fraud claims where relator alleged that every claim submitted for anesthesia services was fraudulent but did not identify any particular claim as representative of the scheme alleged); *R&F Properties of Lake County, Inc.*, 433 F.3d at 1360 (affirming denial of motion to dismiss healthcare fraud claims on Rule 9(b) grounds for failure to explain why relator believed fraudulent claims were ultimately submitted where relator had personal knowledge of billing for services she rendered and alleged she was instructed to code falsely).   Relators have not done so here.   Thus, defendants' motions to dismiss are granted with respect to the claims of fraudulent invoices for bills with false codes and for separate pre-operative tests.

In pleading the sixth allegedly fraudulent billing practice – creating and/or submitting bills for tests performed on spoiled blood samples – the relators identified sixteen different patients for whom the laboratory billed on nine separate dates for these invalid tests.  Am. Compl. ¶ 52.  The relators alleged that

defendants' officers, agents, supervisors, and employees knew these tests had been performed on spoiled blood samples.  Specifically, the relators alleged that laboratory supervisor Paul Pierce instructed laboratory employees to engage in this billing practice, knowing it to be fraudulent.  *Id.*, ¶¶ 19, 45, 49.  The relators worked in the laboratory and were in a position to observe personally the fraudulent billing alleged.

Unlike the first three billing practices alleged, the sixth practice is not a claim of patent falsity (absent the false certification claim addressed below) but rather a claim of ineffective testing.  To transform such a claim into alleged fraud, the relators must point to specific regulations indicating that the alleged practice, if true, is materially false, not merely a technical violation.  See *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) ("All this record reveals is a dispute about whether Baxter's testing protocols could be improved.  An affirmative answer to that question would not suggest that Baxter's representations to the United States in years past were false or fraudulent."); *Lamers*, 168 F.3d at 1019.  The relators have not done so here.  Defendants' motions to dismiss are granted with respect to the claims of fraudulent invoices for tests performed on spoiled blood samples.

C.     *False Certifications of Compliance*

Several circuits, including the Seventh Circuit, have interpreted the False Claims Act to apply to a party who falsely certifies compliance with a federal regulation.  See *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005) (affirming dismissal of healthcare fraud claims using false certification theory); *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001) (affirming summary judgment for defendants on healthcare fraud claims using false certification theory; observing that the Fourth, Fifth, Ninth, and D.C. Circuits have premised liability for false certification on a regulation that conditions payment on certification of compliance).  Following the Second, Fourth, Fifth, Ninth, and D.C. Circuits, the Seventh Circuit requires parties proceeding under a false certification theory to point to a specific regulation conditioning payment of a claim on a certification of compliance.  See *Gross*, 415 F.3d at 605.

Here, in addition to the section 3729(a) submission and statement theories of liability discussed above, the relators premised each claim of fraudulent billing on a false certification theory.[3]  The relators pointed the court generally to

---

[3]In alleging the fraudulent submissions of separate claims for pre-operative tests, the relators stated that the defendants' employees implied false certification. As discussed below, there are problems with all of the false certification claims. But, there are additional hurdles with the implied certification claim.  The Seventh Circuit has not yet adopted or rejected the implied certification theory.   Other circuits are split over the viability and extent of such claims.  See *United States ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 389 (5th Cir. 2008) (continuing to defer determining viability of implied certification theory); *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1172 n.1 (9th Cir. 2006) (deferring determining viability of implied certification theory because express certification was at issue); *Quinn*, 382 F.3d at 443 (3d Cir. 2004) (describing relator's arguments to extend implied certification theory beyond an express (continued...)

-17-

42 C.F.R. parts 482 and 493 but did not point to any specific regulation requiring certification before dispensation of payment, let alone point to one that defendants allegedly violated.  "It was not incumbent upon the district judge to become an expert in all of the regulations governing . . . compliance so that he could piece together a theory on why any particular [claim] might have fraudulently caused the government to cut a check."  *Gross*, 415 F.3d at 605.  Accordingly, relators' claims based on a false certification theory are dismissed.  If relators file a second amended complaint that alleges false certification with particularity, they must direct the court to a specific regulation conditioning payment on certification of compliance.

II.   *Retaliation Claims*

---

[3](...continued)

requirement of compliance as "compelling," but ultimately finding that defendant had not made any false certification); *United States ex rel. Augustine v. Century Health Services, Inc.*, 289 F.3d 409, 415 (6th Cir. 2002) ("liability can attach if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned"); *Mikes*, 274 F.3d at 700 (2d Cir. 2001) ("implied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid"); *United States ex rel. Siewick v. Jamieson Science and Engineering, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000) (finding that implied certification theory works only where relator has shown that "certification was a prerequisite to the government action sought"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 533 (10th Cir. 2000) (affirming denial of defendants' motion for judgment as a matter of law where relator submitted evidence showing that defendant knew it had failed to comply with federal contract requirements); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786 n.8 (4th Cir. 1999) (reserving judgment on the viability of implied certification claims).  Neither side has briefed this issue.  If the relators choose to amend their complaint to pursue an implied false certification theory, briefing will be necessary.

Relators also claim that defendants fired them for expressing concerns about and their intent to notify authorities about the billing practices described above.   The False Claims Act protects employees who take such action:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C.. § 3730(h).  Only defendant Scott Memorial Hospital moved to dismiss the retaliation claims.

To state a claim for retaliatory discharge under section 3730(h), the relators must allege three things:  (1) that they acted in furtherance of a False Claims Act enforcement action; (2) that the defendants knew that the relators were engaged in this protected conduct; and (3) that the defendants were motivated, at least in part, to terminate the relators because of the protected conduct.  See *Brandon v. Anesthesia & Pain Management Associates*, 277 F.3d 936, 944 (7th Cir. 2002) (reversing directed verdict for defendant on state law retaliatory discharge claim; discussing elements of alternative remedy under section 3730(h)).

To warrant protection under the False Claims Act's anti-retaliation provision, a relator need not be able to prove fraud on the merits.  Section 3730(h) protects employees supplying information that could prompt an investigation or

conducting their own internal investigation even where an action is never filed, at least so long as the employee does not make deliberately false or baseless accusations of fraud. *Neal v. Honeywell Inc.*, 33 F.3d 860, 864-65 (7th Cir. 1994) (affirming denial of motion to dismiss section 3730(h) retaliation claim), *overruled on other grounds*, *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 545 U.S. 409 (2005).

Here, relators allege that they contacted federal officials in November 2004 seeking information about how to disclose properly the alleged fraudulent practices. On December 8, 2004, the relators told defendants' employee John Schecler about their plans to notify government officials of the practices the relators had witnessed. On December 9, 2004, defendants terminated relator Abner and suspended relator Kendall. On December 16, 2004, defendants terminated Kendall. By conducting their own investigation and by contacting federal officials in anticipation of litigation, the relators engaged in protected conduct. The court cannot say at this point that their allegations are deliberately false or groundless. Defendants had knowledge through their agent John Schecler of the relators' protected conduct. At this stage, an allegation that the defendants fired the relators immediately after learning of their intentions to reveal fraudulent conduct suffices to plead unlawful motivation. Thus, the court denies defendant Scott Memorial Hospital's motion to dismiss the relators' retaliation claims.

*Conclusion*

For the foregoing reasons, the court GRANTS defendants' motions for judgment on the pleadings with respect to the fourth, fifth, and sixth billing practices and the false certification claims alleged under section 3729(a).  The court DENIES defendants' motions for judgment on the pleadings with respect to the first three billing practices alleged under section 3729(a).  The court DENIES defendant Scott Memorial Hospital's motion for judgment on the pleadings with respect to the retaliation claims alleged under section 3730(h).  The dismissal of claims is without prejudice to relators' ability to file a second amended complaint no more than thirty days after this entry to attempt to cure the pleading defects identified herein.

So ordered.

Date: August 13, 2008

_David F Hamilton_
_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Valerie K. Brooker
KIGHTLINGER & GRAY, LLP
vbrooker@k-glaw.com

John L. Caudill
CAUDILL LAW OFFICE
john@johncaudilllaw.com,angela@johncaudilllaw.com

Erin Reilly Lewis
UNITED STATES ATTORNEY'S OFFICE
shaq.shockley@usdoj.gov,tracy.jones@usdoj.gov

Richard T. Mullineaux
KIGHTLINGER & GRAY, LLP
rmullineaux@k-glaw.com

Janet S. Nolan
FULBRIGHT & JAWORSKI L.L.P.
jnolan@fulbright.com

Frederick Robinson
FULBRIGHT & JAWORSKI L.L.P.
frobinson@fulbright.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov,pearlie.wadlington@usdoj.gov